```
                    UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF FLORIDA
                           MIAMI DIVISION
                   CASE NUMBER 13-20509-CR-MOORE


UNITED STATES OF AMERICA,

              Plaintiff,                    Courtroom 13-1

    vs.                                      Miami, Florida

DANIEL JEAN CHARLES,                       January 29, 2014

              Defendant.
═══════════════════════════════════════════════════════════════
                     SENTENCING PROCEEDINGS
              BEFORE THE HONORABLE K. MICHAEL MOORE
                  UNITED STATES DISTRICT JUDGE
═══════════════════════════════════════════════════════════════

APPEARANCES:

FOR THE GOVERNMENT:        FRANCISCO R. MADERAL, JR., AUSA
                           United States Attorney's Office
                           99 Northeast 4th Street
                           Miami, Florida 33132
                                                305.961.9159
                                           Fax: 305.530.7976

FOR THE DEFENDANT:         PETER T. PATANZO, ESQ.
                           Benjamin & Aaronson
                           1 Financial Plaza
                           Suite 1615
                           Fort Lauderdale, Florida 33394
                                                954.779.1700
                                           Fax: 954.779.1771

REPORTED BY:               GILDA PASTOR-HERNANDEZ, RPR, FPR
                           Official United States Court Reporter
                           Wilkie D. Ferguson Jr. US Courthouse
                           400 North Miami Avenue - Suite 13-3
                           Miami, Florida  33128    305.523.5118
                           gphofficialreporter@gmail.com
```

```
 1                    TABLE OF CONTENTS

 2                                                          Page

 3

 4
     Reporter's Certificate ..................................... 12
 5

 6

 7

 8

 9

10                          EXHIBITS

11   Exhibits                  Marked for          Received
                              Identification      in Evidence
12
     Description                 Page     Line     Page    Line
13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1              (The following proceedings were held at 8:50 a.m.)
 2              THE COURT:  Do you want to call the case?
 3              THE COURTROOM DEPUTY:  Case Number 13-20509-Moore,
 4   United States of America versus Daniel Jean Charles.
 5              Counsel, state your appearances starting with the
 6   Government.
 7              MR. MADERAL:  Good morning, Your Honor.  Frank Maderal
 8   on behalf of the United States of America.
 9              MR. PATANZO:  Good morning, Your Honor.  Peter Patanzo
10   on behalf of Mr. Jean Charles who's present, and I apologize for
11   being late this morning.
12              THE COURT:  All right.  Do you want to take up the
13   objections to the PSI?
14              MR. PATANZO:  Certainly.
15              Judge, I have nothing else to offer other than both
16   parties were going to recommend that the defendant receive a
17   two-level reduction for his minor participation.  The factual
18   basis set forth his limited role which we agreed to at the time
19   of the change of plea, essentially just being in control of
20   certain residences where mail was sent.
21              When compared to other members in the conspiracy, in
22   our opinion, and I think the Government agrees, his conduct
23   meets the requirements of a minor role, and we would ask that
24   the two-level reduction be given.
25              THE COURT:  Okay.  Well, you can all have a seat.
```

```
 1              And this is the case where I think you asked for
 2   additional time to file those objections; am I right?
 3              MR. PATANZO:  I did.
 4              THE COURT:  We went ahead and granted that.
 5              You filed the objection on the role in the offense and
 6   based in part on the factual recitation set forth in Paragraph
 7   19 of the Presentence Investigation Report, and I think
 8   everybody is in agreement that there were facts in that
 9   paragraph that we now agree are erroneous.
10              So with that, the probation office responded
11   acknowledging that, and with the Court order, we'll delete those
12   inaccuracies from Paragraph 19.  So we will then direct the
13   probation officer to do that.
14              Now, having said that, I've gone ahead and I've looked
15   at the PSI Report in the absence of that paragraph and agree
16   with the probation officer that the minor role reduction is,
17   nevertheless, not warranted.
18              There are a couple of points about that.  First, I note
19   that in this case there were only two individuals that were
20   identified as participants, as I understand it, which allows for
21   the consideration of a role adjustment and it only needs to be
22   more than one.  But in looking at the section typically that
23   would involve participants, plural, and I'm not suggesting that
24   it needs to be more than one, but in looking at 3B1.2,
25   mitigating roles, III, applicability of adjustments, 3(A)
```

1  section provides a range of adjustments for a defendant who
2  plays a part in committing the offense that makes him
3  substantially less culpable than the average participant.  And
4  then there are range of reductions, 2, 3 and 4.
5         The minor participant, Subsection B, applies or
6  describes an application of a defendant who is "less culpable
7  than most other participants but whose role could not be
8  described as minimal."
9         So as I said, I think there's only one other
10 participant in this case that I saw the probation officer
11 describe, and that is the defendant Compere, and their roles are
12 described in Paragraphs 17 and 18 of the Presentence
13 Investigation Report.
14        Compere, from what I can tell from the report at
15 Paragraph 9, he was sentenced to a term of 70 months, and that
16 consisted of 46 months as to Count 1 and 24 months as to Count
17 3.
18        Both of these defendants had different
19 responsibilities, but in terms of the dollar amount of loss,
20 they are relatively similar.  There's a slight difference there.
21 In Paragraph 17 Compere is responsible for restitution in the
22 amount of $284,259.62, and this defendant is responsible for
23 $239,433.90.
24        Compere was responsible for a guideline loss of $1
25 million, but not more than 2.5 million, which provided for a

1  16-level increase.  This defendant under Paragraph 25 is held
2  accountable for a loss of more than 200,000, but not more than
3  400,000.  So I assume that is what accounts for the difference
4  in the guideline range.  Is that correct or not correct?
5          MR. MADERAL:  Yes, Your Honor, Compere, it's safe to
6  say, was involved in several conspiracies, two-men conspiracies
7  with many people, and his loss amount consisted of a lot of PII,
8  personal identifying information, that he was found with at a
9  search warrant.  So that's what brought him up to a million.
10         So the reason that Mr. Charles is only responsible for
11 the smaller loss amount is because the figure, the $238,000
12 figure, that was the particular conspiracy between Mr. Compere
13 and Mr. Charles.
14         THE COURT:  Right, but there was a difference in the
15 amount.  At least in this particular conspiracy there was
16 284,000 and change attributed to Compere and 239 attributed to
17 this defendant.
18         MR. MADERAL:  Right.  And I believe that difference is
19 because there was some payout to Mr. Compere that we couldn't
20 tie to this conspiracy here.
21         THE COURT:  I understand.  So I do think that he's
22 looking at -- Compere wound up getting 70 months, and at least
23 within this conspiracy, they were relatively equally culpable,
24 at least in my judgment, that you could not conclude that he was
25 less culpable than Compere, at least according to the

1  application adjustment of 3(A) that makes him substantially less
2  culpable than the average participant.  I understand that
3  there's a gray area there, but I don't see a significant enough
4  of a difference to warrant a reduction.  So I'll note the
5  objection and deny it.
6          Any other objections?
7          MR. PATANZO:  That was the only objection that we had.
8          THE COURT:  Okay.  So the probation office has
9  calculated offense level of 19, Criminal History of II and a
10 guideline range of 33 to 41 months as to Count 1 and as to Count
11 6, two years consecutive.  Is that a fair calculation of the
12 guidelines?
13         MR. MADERAL:  Yes, Your Honor.
14         THE COURT:  Mr. Patanzo, is that a correct calculation?
15         MR. PATANZO:  I was just getting to the paragraph of
16 the PSI.
17         Judge, that's correct, 33 months at the bottom
18 obviously with a consecutive 24 months.
19         THE COURT:  Okay.  Mr. Charles, do you want to say
20 anything on your own behalf before sentence is imposed?
21         THE DEFENDANT:  No, sir.
22         THE COURT:  All right.  Thank you.
23         Mr. Patanzo, anything on his behalf?
24         MR. PATANZO:  Judge, just for the record, I do want to
25 note the objection to the Court's findings about the minor role.

1           THE COURT:  It's noted.

2           MR. PATANZO:  And in any event, setting that aside, I

3  would just state that Mr. Charles accepted responsibility.  From

4  the inception of his arrest, he began cooperating with the

5  agents.  He gave them a full statement immediately upon being

6  arrested, and since then has been participating with the

7  Government in that respect and in several other things that we

8  hope develop down the road.

9           With that, we're hoping the Court will impose a

10 minimally sufficient sentence.  I think when you couple the 33

11 months with the 24 months, that's going to reflect not only his

12 conduct in the case, it certainly will be a sufficient sentence

13 that would appropriately reflect the just punishment and is

14 consistent when considering all of the conduct Mr. Compere was

15 involved with.  We're getting close to a five-year sentence when

16 he had just about a 70-month sentence, which is just a little

17 more than what he's going to receive today.

18          So we hope the Court will take all that into

19 consideration and give him the bottom of the guidelines,

20 obviously with the consecutive 24-month sentence.

21          THE COURT:  And that's my intention.

22          Anything from the Government?

23          MR. MADERAL:  Nothing further, Your Honor.

24          THE COURT:  The Court has considered the statements of

25 all parties, the Presentence Report which contains the advisory

1  guidelines and the statutory factors that are set forth in Title
2  18, United States Code, Section 3553(a).  The Court shall impose
3  a sentence within the advisory guideline range, as it is
4  sufficient to deter future criminal activity.
5           It's the finding of the Court the defendant is not able
6  to pay a fine.  It's the judgment of the Court the defendant,
7  Daniel Jean Charles, is committed to the Bureau of Prisons to be
8  imprisoned for 57 months.  This term consists of 33 months as to
9  Count 1 and 24 months as to Count 6, all to be served
10 consecutively.
11          It's further ordered the defendant shall pay joint and
12 several restitution with defendant, Wesly Compere, in Docket
13 Number 13-Criminal-20152 in the amount of $239,433.90.
14          During the period of incarceration, payment shall be
15 made as 50 percent of wages earned toward the financial
16 obligations.  If the defendant does not work the Unicor job,
17 then it will be $25 per quarter towards the financial
18 obligation.
19          Upon release from prison, the defendant shall be placed
20 on supervised release for a term of three years.  This term
21 consists of three years as to Count 1 and one year as to Count
22 6, all such terms to run concurrently.
23          Within 72 hours of release from the custody of the
24 Bureau of Prisons, the defendant shall report in person to the
25 probation office in the district to which the defendant is

1  released.

2       While on supervised release, the defendant shall not
3  commit any crime, shall be prohibited from possessing a firearm
4  or other dangerous device, shall not possess a controlled
5  substance, shall cooperation in the collection of DNA, shall
6  comply with the standard conditions of supervised release
7  including the following special conditions:  Association
8  restriction, financial disclosure requirement, no new debt
9  restrictions, self-employment restrictions, related concern
10 restriction and permissible search as noted in Part G of the
11 Presentence Report.

12      The defendant shall immediately pay to the United
13 States a special assessment of $100 as to each of Counts 1 and 6
14 for a total of $200.  The total sentence is 57 months
15 imprisonment, $239,433.90 restitution, three years supervised
16 release and a $200 special assessment.  Forfeiture of the
17 defendant's right, title and interest to certain property is
18 hereby ordered consistent with the Plea Agreement.

19      The United States shall submit a proposed order of
20 forfeiture within three days of this proceeding.

21      Now that sentence has been imposed, does the defendant
22 or his counsel object to the Court's finding of fact or to the
23 manner in which sentence was pronounced?

24      MR. PATANZO:  Just those previously stated.

25      THE COURT:  Okay.  Mr. Charles, do you understand that

```
 1   you have a right to appeal the sentence that I've imposed?
 2           THE DEFENDANT:  Yes, sir.
 3           THE COURT:  Do you wish to appeal?
 4           THE DEFENDANT:  No, sir.
 5           THE COURT:  Okay.
 6           MR. PATANZO:  Judge, that's something that we -- I just
 7   want the record to be clear.  We haven't really discussed that.
 8   That's something that we will discuss, obviously, in the next 14
 9   days.
10           THE COURT:  Okay.  He's aware of his rights.
11           Today is January 29th and I'm assuming that he'd like
12   to be placed as close as possible to his family members in the
13   South Florida area as well to be given an opportunity to
14   voluntarily surrender?
15           MR. PATANZO:  Yes, sir.
16           THE COURT:  So we'll include incarceration as close as
17   possible to his family members in the South Florida area.
18           How much time is he requesting to voluntarily
19   surrender?
20           MR. PATANZO:  As much time as the Court's willing to
21   give us.  60 days?
22           THE COURT:  Well, let's go ahead and -- today, as I
23   said, is the 29th.  I think he should be designated within 30
24   days.  So that will give him a chance to get his affairs in
25   order.
```

1      So we'll set it to March 3rd, which is a Monday, 2014

2 at noon, either to the U.S. Marshal Service here in Miami or to

3 the designated institution.  All righty?

4      MR. PATANZO:  Thank you.

5      THE COURT:  Thank you.

6      MR. MADERAL:  Thank you, Your Honor.

7      THE COURT:  Thank you.

8    (The hearing was concluded at 9:00 a.m.)

9

10              C E R T I F I C A T E

11     I hereby certify that the foregoing is an accurate

12 transcription of proceedings in the above-entitled matter.

13

14 _____           _____
     DATE                    GILDA PASTOR-HERNANDEZ, RPR, FPR
15                           Official United States Court Reporter
                             Wilkie D. Ferguson Jr. U.S. Courthouse
16                           400 North Miami Avenue, Suite 13-3
                             Miami, Florida  33128    305.523.5118
17                           gphofficialreporter@gmail.com

18

19

20

21

22

23

24

25